UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEX GOLDMAN,<br><br>Defendant. | No. 2:18-cr-00077-TLN<br><br>**ORDER** |

This matter is before the Court on Defendant Alex Goldman's ("Defendant") Emergency Motion for Modification of Sentence. (ECF No. 38.) The Government filed an opposition. (ECF No. 40.) Defendant filed a reply. (ECF No. 44.) For the reasons set forth below, the Court DENIES Defendant's motion.

///
///
///
///
///
///
///
///

1

### I.     FACTUAL AND PROCEDURAL BACKGROUND

On May 18, 2018, Defendant pleaded guilty to conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371. (ECF No. 13.) On September 20, 2018, Defendant was sentenced to a 36-month term of imprisonment and a 12-month term of supervised release. (ECF No. 30.) Defendant also forfeited assets worth approximately $14 million. (ECF No. 13.) Defendant began serving his sentence on October 29, 2018 and is housed at FCI Otisville Camp in Otisville, New York. (ECF No. 40-1.) His projected release date is May 19, 2021. (*Id.*)

On April 7, 2020, Defendant submitted a request for home confinement or compassionate release citing 18 U.S.C. § 3582(c). (ECF No. 38-1 at 1–2.) On April 13, 2020, Defendant's attorney also submitted a compassionate release petition on Defendant's behalf pursuant to the CARES Act and to 18 U.S.C. § 3582(c)(1)(A)(i) to Warden Petrucci of FCI Otisville. (ECF No. 38-1 at 5–11.) According to the Government's opposition, the Bureau of Prisons ("BOP") only considered Defendant's request for relief under the CARES Act and denied his request. (ECF No. 40 at 10.)

On May 1, 2020, Defendant filed the instant motion for release to home confinement. (ECF No. 38.) Defendant argues he is at a greater risk of suffering severe symptoms from COVID-19 because he was a smoker for 20 years and may have skin cancer. (*Id.* at 2.) In opposition, the Government argues Defendant may not challenge the BOP's decision under the CARES Act and failed to exhaust his administrative remedies under 18 U.S.C. § 3582(c)(1)(A) because the BOP considered his request under the CARES Act instead of the First Step Act. (ECF No 40 at 10.)  The Government also argues the Court should deny Defendant's motion pursuant to 18 U.S.C. § 3582(c)(1)(A) because Defendant failed to demonstrate extraordinary and compelling reasons to warrant his release and the 18 U.S.C. § 3553(a) factors weigh against his release. (*Id.* at 11–13.) Finally, the Government argues this Court does not have jurisdiction to designate the place of Defendant's imprisonment under 18 U.S.C. § 3621. (*Id.* at 14–15.)

///

///

///

**II.     ANALYSIS**

     A.     <u>Exhaustion</u>

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010).  The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) sets forth a rare exception to the general rule.  However, relief under 18 U.S.C. § 3582(c)(1)(A) is only available upon motion of the Director of the BOP or

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier…

18 U.S.C. § 3582(c)(1)(A).

In the instant case, the Government argues that Defendant's April 7, 2020 inmate request to the warden of FCI Otisville did not satisfy the exhaustion requirement because "[t]he BOP evaluated [the request] as a request for home confinement under the CARES Act.  It did not consider it a First Step Act Reduction in Sentence/Compassionate Release Request under the provisions of 18 U.S.C. § 3582(c)."  (ECF No. 40 at 10.)  However, the Government concedes Defendant's request included reference to § 3582(c).  (*Id.*)  The Government's opposition fails to address the April 13, 2020 request for compassionate release sent by Defendant's attorney.

According to 28 C.F.R. § 571.61, a compassionate release request must contain "at minimum" the following information: "(1) the extraordinary or compelling circumstances that the inmate believes warrant consideration"; and "(2) proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment."

Defendant's inmate request met the minimum requirements of 28 C.F.R § 571.61.  In Defendant's request, he asserted that he believes he is at risk of contracting COVID-19 because he was in close contact with other inmates who tested positive for COVID-19 or were awaiting the results of testing.  (ECF No. 38-1 at 1–2.)  Defendant also described his re-entry plan,

including details about his proposed place of residence, access to medical care, and income sources. (*Id.*) Defendant indicated he would live with his wife and stepson, both of whom had been self-quarantining for 20 days. (*Id.*) Further, Defendant specifically mentioned § 3582(c) in his request making it clear that the request was under the First Step Act.

The Government's argument that how the BOP treats a request for compassionate release that otherwise meets the criteria set forth in 28 C.F.R § 571.61 can change the nature of that request and render it insufficient for exhaustion purposes is not well taken.  Indeed, by this logic the amendments made to the First Step Act allowing inmates to bring a motion for release to the court would be rendered moot.  Not only does Defendant's request to the warden meet the exhaustion requirements, the request submitted by his attorney does as well.  For all these reasons, Defendant's request was sufficient to be construed as one for compassionate release in these unprecedented circumstances.

Therefore, "the receipt of . . . a [compassionate release] request by the warden of the defendant's facility" in this case was April 7, 2020. *See* 18 U.S.C. § 3582(c)(1)(A).  Because 30 days have passed since April 7, 2020, Defendant has met the exhaustion requirement.[1]

### B.     Extraordinary and Compelling Reasons

Despite having met the exhaustion requirement, Defendant is eligible for compassionate release only if he can demonstrate there are "extraordinary and compelling reasons" for a sentence reduction and such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).  Defendant has not met his burden.

The Sentencing Commission's relevant policy statement on compassionate release identifies medical conditions that satisfy the "extraordinary and compelling" requirement. U.S.S.G. § 1B1.13, cmt. n. 1(A).  More specifically, the "extraordinary and compelling" requirement is met where a defendant is: (i) suffering from a terminal illness; or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process "that substantially diminishes

---

[1] The Court views this as a motion under the First Step Act not a challenge to the BOP's determination under the CARES Act.

the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

Under normal circumstances, the Defendant's alleged medical condition would not satisfy the "extraordinary and compelling" standard. The Court is mindful that people with certain health conditions can be particularly vulnerable to COVID-19. However, Defendant fails to produce evidence of a diagnosed medical condition that would make him more vulnerable. In support of his motion, Defendant cites his 20-year smoking habit and the removal of potentially cancerous skin lesions. This information is insufficient for the Court to determine that Defendant is more vulnerable to COVID-19. Defendant's medical records — filed by himself and the Government under seal — indicate that he is a generally healthy individual. While Defendant's medical records indicate the removal of skin cancer from his face, those medical records do not indicate any ongoing medical issues. As it is, there is no indication Defendant has any terminal health conditions, nor that he experiences serious functional or cognitive impairment such that he is unable to provide self-care while imprisoned. Defendant's past history of smoking is not sufficient to meet the extraordinary and compelling standard, even with the threat posed by COVID-19. Further, Defendant's age, 45, does not place him in a higher at-risk group. As of the date of this Order, there are no active inmate cases of COVID-19 at FCI Otisville and only one active staff case of COVID-19. Twelve inmates and 14 staff have recovered from COVID-19 infections at this facility.

As a whole, Defendant's arguments about COVID-19 are too general and wide-ranging. *See, e.g.*, *Eberhart*, 2020 WL 1450745, *2 ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement[.]"). Defendant's concerns are understandable but do not raise to the level of "extraordinary and compelling" at this time.

///

///

///

///

In sum, the Court DENIES Defendant's request for compassionate release because he did not meet his burden to show there are "extraordinary and compelling reasons" for his release.[2] Because Defendant has not met this burden, the Court need not analyze the 18 U.S.C. § 3553(a) factors.

### III.  CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Emergency Motion for Modification of Sentence.  (ECF No. 38.)

IT IS SO ORDERED.

DATED:  June 2, 2020

 

Troy L. Nunley
United States District Judge

---

[2]  To the extent Defendant alternatively asks the Court to change his custody status to home confinement, 18 U.S.C. § 3621(b) precludes the Court from doing so.  *See* 18 U.S.C. § 3621(b) (precluding judicial review of BOP placement decisions).  Further, the Court is not inclined to issue an order that has no force or effect and is not binding on the BOP.  *United States v. Robles*, No. 2:12-CR-00424-TLN, 2020 WL 1904709 (E.D. Cal. Apr. 17, 2020) ("A judicial recommendation is one factor that the BOP considers in determining a prisoner's placement, but a recommendation has 'no binding effect' on the BOP to determine or change a prisoner's placement").